## JAMES H. BOYCE v. JOHN C. CANNON ET AL.

In an action of replevin by the purchaser of goods at a constable's sale, the record of the judgment on which the execution was issued is admissible in evidence without the production and proof of the warrant on which it was entered by the justice of the peace.

The plaintiff in such a case must show the judgment and execution on which the goods were sold and he bought them, but he is not bound to show the regularity or sufficiency of the levy of the execution on them by the constable, for that cannot be collaterally inquired into or considered in the action.

26

Where the goods were not replevied under the writ, the value of them when they were taken by the defendants is the measure of the damages the plaintiff is entitled to recover in the action, and it is in the discretion of the jury to allow him interest thereon if they see proper.

Although the defendant in the judgment stands in the relation of step-father to the plaintiff, if the obligation on which it was entered was not for a just and *bona fide* debt due to the latter, but was a cover merely to shield his property against the claims of actual creditors and the plaintiff allows the goods to remain in his use and possession after the sale of them on the execution, it will vitiate and avoid the sale thereon as fraudulent in law, and the plaintiff will take no title to them, but in the absence of direct and positive proof that such was the case, the fact that he bought the goods at the constable's sale for much less than their value and allowed them to remain in the possession of the defendant would not present sufficient circumstantial or presumptive evidence to sustain the defense of fraud set up in the case, for the provision of the statute of frauds which renders void the sale of goods whether by bill of sale or otherwise, without an actual delivery of them to the vendee, does not apply to a public judicial sale of goods under execution process.

ACTION of replevin for certain live stock, household and kitchen furniture, farming utensils, etc. The plaintiff had recovered a judgment before a justice of the peace against Minos Hitchens, his step-father, for ninety-five dollars and eighty-seven cents and costs, on which an execution had been issued and levied on the goods in question, and on which they had been sold and bought by the plaintiff on the 4th day of December, 1875, who took a bill of sale for them from the constable who made the sale, but without taking them out of the possession of the defendant in the execution and which afterward came into the possession of the defendants in the action, and on the 10th day of January, 1876, a formal demand was made on them by the plaintiff for the possession of them and they refused to deliver them.

On the offer of the record of the justice of the peace in evidence to prove the judgment before mentioned, it appeared to have been entered on a warrant authorizing any justice of the peace to enter judgment on the obligation given for the debt without process. The counsel for the defendants objected to the admissibility of the record in evidence without the production of the warrant also in evidence, and cited *Pennington* v. *Chandler*, 5 *Harr.* 394.

*But the Court* overruled the objection, and it was admitted in evidence without the production of the warrant.

The judgment and the execution thereon, with the levy, inventory, sale, and return of the constable, were then offered in evidence, when the counsel for the defendants objected to the admissibility of the inventory on the ground of its insufficiency and uncertainty in the designation and description of the goods or various articles of personal property referred to in it.

*But the Court* overruled the objections, and the same were also admitted in evidence.

The constable who had sold the goods under the execution was then called by the counsel for the plaintiff and proved the bill of sale which he had executed and delivered to the plaintiff for the goods in question and purchased by him at the constable's sale, for which he was the highest bidder at the aggregate sum of forty-seven dollars and forty-seven cents. On cross-examination he stated that he did not see the horse or anything mentioned in the levy when it was made by him. He also stated that neither the levy nor the bill of sale designated the number of plows and harrows levied on and sold. After further proving the execution and delivery of the bill of sale by the subscribing witness to it and putting it in evidence and proving the formal demand of the plaintiff on the defendants for the goods and their refusal to deliver them, they proceeded and proved by the testimony of several witnesses that the aggregate value of the goods sold at the constable's sale to the plaintiff was not less than three hundred dollars, on which they claimed interest for the detention of them from the time of the taking by the defendants in their argument of the case before the court and jury.

The counsel for the defendants asked the court to charge the jury that no levy on plows and harrows, or any other kinds of goods in the lump, without designating, at least, the number of them, was a good and valid levy in law, or could confer any legal right or title to them on a purchaser of them at a sale under the execution. 2 *Tidd's Pr.* 1044. Also that interest could not be allowed the plaintiff in case he was entitled to recover in the

action on the value of the goods for the detention of them from the time of the taking by the defendant by the jury in enhancement of the damages claimed by him. *Donely* v. *McGraun & McClay*, 1 *Harr.* 453 ; *Truitt* v. *Revill*, 4 *Harr.* 71 ; *Pennington* v. *Chandler*, 5 *Harr.* 394 ; 6 *Law Libr.* 47. It was also a suspicious circumstance in the case that, notwithstanding a formal bill of sale was taken for the goods by the plaintiff from the constable immediately after the sale of them under the execution, they were never in fact delivered to him, but remained as before in the use and possession of the defendant in it until they came into the possession of the defendants in this action ; and as the plaintiff stood in the relation of step-son to the defendant in the execution, it naturally suggested the inquiry and a doubt whether the sale under it was a *bona fide* sale in payment of a real debt honestly due from the step-father to the step-son, or the whole thing, the entry of the judgment without process or contest between them, the issuing of the execution, the gross imperfections and irregularities in the levy of it upon the goods, and which was made without the constable's having seen any of them, and the sale of the whole of them to plaintiff himself for the paltry sum of forty-seven dollars and forty-seven cents, was not all contrived between the two by such an apparently legal and judicial sale to cover the property merely for the benefit of the step-father, who was to retain the use and possession and practically the ownership of it as before, so as to shield it from his actual and *bona fide* creditors. If such was the scheme and design and the bad faith with which the sale was made, then it was fraudulent and void in law, notwithstanding it was characterized by all the legal forms and formalities which a public and judicial sale of the kind can have in any case, and the plaintiff could not recover. *Pennington* v. *Chandler*, 5 *Harr.* 395.

The reply of the counsel for the plaintiff on the law and the facts proved in the case are sufficiently disclosed in the charge of the court to the jury, which was substantially in accordance with it.

*The Court, Comegys, C. J., charged the jury:* It has been ruled in this court in the case cited by the counsel for the defend-

ants, *Pennington* v. *Chandler*, 5 *Harr.* 394, that a purchase of goods at constable's sale in an action like this to recover them, or the value of them, must show the judgment and execution under which they were sold and he purchased them, but is not bound to show the regularity of the proceedings of the constable under the execution, for it is a general and well-settled rule of law that the records and proceedings of a court of competent jurisdiction over the subject-matter cannot be inquired into or controverted in a collateral proceeding or in a trial between different parties on the ground of irregularity. Therefore the matter of objection raised in this case by the counsel for the defendants, that the goods were levied on in bulk, or without sufficient particularity in the designation and description of them in the levy by the constable, could not be inquired into or considered in this action; and consequently it is our duty to say to you, so far as that matter of objection is concerned, it could have no effect whatever to impair the legality or validity of the sale of the goods to the plaintiff under the execution. In that case the court held there was another and a proper mode of meeting and remedying a similar objection raised in it, and that it would have been competent for the defendant in the execution to have raised the objection before the justice of the peace who issued it, and by whom the case was tried, at the return of the constable by whom the levy was made, to such an irregularity in the levy of it, and to have had it set aside by him and a proper levy made. Besides, it would be against sound policy to allow such an objection to prevail in a subsequent suit between other parties and before another tribunal in which it comes up in a collateral way only, as the effect of a contrary ruling would be to deter people from attending and bidding at such public and judicial sales necessarily sanctioned and required by law in the due course and administration of public justice by the appropriate tribunal provided for the purpose.

The value of the goods in question which were taken by the defendants, but were not replevied, it seems, and restored to the plaintiff under the writ, must be ascertained and determined by the jury from the evidence before them in regard to the matter, and if their verdict should be for the plaintiff, whatever they

should find to be the value of them at the time of the taking by the defendants would constitute the measure of the damages which the plaintiff would be entitled to recover for it in the action. As to the claim of interest on that valuation from the time of the taking to the rendition of the verdict made on behalf of the plaintiff in enhancement of the damages to be allowed as but a just and reasonable addition to them, the practice of the court now is to leave it to the discretion and decision of the jury whether interest shall or shall not be allowed on the damages actually sustained in any such case. Upon the defense of fraud presented in the case, the court could only say to the jury that was a defense never to be presumed merely and could only be sustained by direct proof or such circumstantial evidence as clearly and conclusively establishes it to the satisfaction of the jury in any case in which it is alleged and relied on as a legal defense, and which it unquestionably is in any and every case when so proved and established to the satisfaction of the jury. There was no direct or positive proof whatever produced to sustain the defense of the fraud alleged in this case, and in the absence of any such proof that there was no real debt due from Hitchens to the plaintiff, his step-son, when the obligation was given on which the judgment was entered, and that the purpose of selling the goods under the execution was merely to cover them so as to shield them against debts due to actual and *bona fide* creditors, which would have rendered the whole proceeding fraudulent and void, notwithstanding the apparently legal and judicial proceedings by which it was accomplished, the fact that the plaintiff became the purchaser of the goods at the constable's sale and took a bill of sale for them from him, without a delivery of them to him, but allowed them to remain in the possession of the defendant in the execution, Hitchens, his step-father, from the day of the sale, which was December 4th, 1875, until the taking of them by the defendants, which must have been before the 10th of January following, the date of his demand on them for the goods, cannot and does not present such a chain of circumstantial or presumptive evidence as the law requires to sustain such a defense as that of fraud set up in this case. For if the obligation was given in good faith

by Hitchens to the plaintiff for a real debt to that amount due him, then not only the judgment and execution but the sale of the goods under them, without a delivery of them to the plaintiff, was valid and binding, and gave him a good right and title to them, as the provision of our statute of frauds against the sale of goods without actual delivery of them to the vendee does not apply to a public judicial sale of goods under execution process. *Perry* v. *Foster*, 3 *Harr.* 293; *Pennington* v. *Chandler*, 5 *Harr.* 395.

*Moore & Cullen*, for the plaintiff.

*Layton*, for the defendants.